Argued and submitted April 30, reversed and remanded
with instructions September 15, reconsideration denied October 27,
petition for review allowed November 16, 1982 (294 Or 149)

PHILIPPI et al,
*Petitioners,*

*v.*

CITY OF SUBLIMITY,
*Respondent.*

(LUBA No. 81-078, CA A23238)

650 P2d 1038

M. Chapin Milbank, Salem, argued the cause for petitioners. With him on the brief was Schlegel, Milbank, Jarman & Hilgeman, Salem.

James D. Tiger, Stayton, argued the cause for respondent. With him on the brief was Duncan & Tiger, Stayton.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Petitioners seek judicial review of a final order of the Land Use Board of Appeals (LUBA) remanding their subdivision request to the City of Sublimity for further findings. Petitioners assign as error the failure of LUBA to rule that a subdivision permit for a parcel of land, designated in the acknowledged comprehensive plan as residential and zoned as single family residence (SFR), may not be denied on the sole basis of a policy in the comprehensive plan favoring retention of agricultural land.

■ Petitioners own a ten-acre parcel located within the acknowledged urban growth boundary (UGB) of the City of Sublimity. Their request for approval of a subdivision creating 34 lots was denied by Sublimity through the application of several statements scattered throughout the comprehensive plan. The policies expressed therein are of general applicability and fall into four main categories, although there is some overlap: (1) retention of agricultural land,[1] (2) retention of open space,[2] (3) discouragement of leap-frog development[3] and (4) lessening of the burden on

---

[1]

"Land which is inside the city limits and urban growth boundary that is in agricultural use shall remain in agricultural use until it is needed for urbanization and can be provided with urban facilities." Sublimity's Comprehensive Plan (CP) at 11.

"Encourage the location of housing to minimize the consumption of prime agricultural land and other areas of natural resource that contribute to the community's rural character." CP at 34.

"Discourage the premature, unnecessary and wasteful conversion of valuable agricultural land to city uses." CP at 38.

"Ensure available space for varying land uses through the provision of agricultural uses and interim open spaces." CP at 38.

[2]

"The City shall encourage development plans that provide for preservation of open space areas." CP at 12.

"Preserve open space area to enhance the quality of life and protect natural resources." CP at 38.

[3]

" 'Leapfrog' development passes over vacant land to use outlying parcels that may be less expensive to acquire, but creates a situation that prematurely takes agricultural land and open space out of production. Not only is this an inefficient use of land, but an unattractive use as well. Therefore, the following policy was adopted:

public facilities such as schools, existing traffic corridors and sewage systems.[4] These policies are not explicitly identified in the comprehensive plan as criteria for accomplishing conversion of "urbanizable" land to urban uses, pursuant to statewide planning Goal 14,[5] notwithstanding the plan's acknowledgment by LCDC. In fact, there is nothing in the plan designating any land as "urbanizable." Neither is there any unzoned land within the UGB.

On petitioners' appeal, in response to the first of two contentions, LUBA ruled that Sublimity's findings failed to explain why the facts as found resulted in a conclusion that several policies had not been met by the proposed subdivision. For example, the city had concluded that one of the access streets would not be safe unless it were widened and maintained, because of the hilly terrain, and that that was not presently planned. LUBA also questioned the conclusion that traffic safety would be a problem, given a city report that traffic on the street was below maximum levels, petitioners' testimony that the sight distance for stopping was adequate and petitioners' proposal

---

Residential development shall be encouraged to utilize vacant parcels of bypassed land in order to achieve a more compact community." CP at 34.

4

"Locate residential development only where adequate public services and facilities can be economically provided." CP at 35.

"Encourage development of land within the gravity flow areas." CP at 50.

"Establish a street system which is consistent with orderly growth and minimizes conflicts with adjacent land uses." CP at 63.

"Provide a circulation system which is safe and efficient for both vehicle users and pedestrians." CP at 63.

[5] Goal 14 provides, in relevant part:

"Land within the boundaries separating urbanizable land from rural land shall be considered available over time for urban uses. Conversion of urbanizable land to urban uses shall be based on consideration of:

"(1) Orderly, economic provision for public facilities and services;

"(2) Availability of sufficient land for the various uses to insure choices in the market place;

"(3) LCDC goals; and

"(4) Encouragement of development within urban areas before conversion of urbanizable areas."

After acknowledgment by LCDC of the comprehensive plan, the plan itself is to guide conversion. *See* ORS 197.605(5).

to widen the street in front of their property and install curbs. On a number of points, therefore, LUBA remanded the case to Sublimity for further findings. Petitioners do not quarrel with that remand. *See Wes Linn Land Co. v. Bd. of County Comm'rs,* 36 Or App 39, 583 P2d 1159 (1979).

In response to petitioners' second contention, LUBA did not, as requested, rule that the plan designation of residential and the zoning designation of SFR precluded Sublimity from denying the subdivision application on the ground that it was agricultural land. LUBA did not directly respond to this contention. LUBA ruled instead that it was permissible to preserve agricultural land located within the UGB and zoned residential until development could be justified under *other* general policies contained in the comprehensive plan. Implicit in LUBA's opinion, however, is the notion that the city was entitled to postpone development on land located within the UGB, designated in the comprehensive plan as residential and zoned by ordinance for residential use, on the basis of *any* general policy, specifically that favoring retention of agricultural land. It is the latter concept that petitioners challenge in their appeal before us.

■ Land within an acknowledged UGB is either urbanizable or urban; by definition, there is no rural land within the boundary. *Willamette University v. LCDC,* 45 Or App 355, 368-69, 608 P2d 1178 (1980). Goal 3 provides, in relevant part:

> "Conversion of rural agricultural land to urbanizable land shall be based upon consideration of the following factors: (1) environmental, energy, social and economic consequences: (2) demonstrated need consistent with LCDC goals; (3) unavailability of an alternative suitable location for the requested use; (4) compatibility of the proposed use with related agricultural land; and (5) the retention of Class I, II, III and IV soils in farm use. A governing body proposing to convert rural agricultural land to urbanizable land shall follow the procedures and requirements set forth in the Land Use Planning goal (Goal 2) for goal exceptions."

An exception to Goal 3 was necessarily made when this land was converted from rural to urbanizable by its inclusion within the UGB as specifically residential land.

Moreover, the preface to the comprehensive plan explains that Goal 3 is not addressed in the plan because "[t]here will be no agricultural * * * lands preserved within the Urban Growth Boundary." It would be anomalous for a local government to rely on a policy favoring the retention of agricultural land *qua* agricultural land as a basis for precluding development within the UGB of land designated and zoned for residential use.

We have said that general policies in the comprehensive plan that speak to overall community planning are more appropriately applied in the planning and zoning process than in the design of any one specific project. *McIntyre-Cooper Co. v. Bd. of Comm.*, 55 Or App 78, 84-85, 637 P2d 201 (1981), *rev den* 292 Or 589 (1982). We have also held that, under ORS 92.044 and 92.090, subdivisions must comply with general policies contained in the comprehensive plan, as long as specific requirements are made known to the applicants at least by the time of the tentative plat approval. *Commonwealth Properties v. Wash Co.*, 35 Or App 387, 393, 400, 582 P2d 1384 (1978). In *Commonwealth*, however, the general policies discussed in the opinion, such as retaining distinctive natural features of a site, or preserving existing vegetation as part of the development, were compatible with the existing plan designation and zoning.

Sublimity argues, and LUBA concluded, that a city subdivision ordinance provision[6] permits the city to deny a request for subdivision approval if the proposed subdivision is not in accordance with the "provisions and intent" of the comprehensive plan; that is, *any* general statement in the comprehensive plan can be used as a basis to deny the

---

[6]

"SECTION 6.01. CONSIDERATIONS FOR APPROVAL OR DENIAL. When considering the appropriateness of a subdivision or partitioning application the commission will consider whether or not it is in accordance with the provisions and intent of the Sublimity Comprehensive Plan, if it is necessary and proper for the orderly growth of Sublimity, or if it is in accordance with the intent and regulations set forth in this ordinance. In reviewing an application, the commission may prescribe conditions or make changes or modifications to the plan it feels are necessary to promote proper and orderly development of the community. If the commission finds that the application is not consistent with any or all of the provisions set forth above, the commission may view the application with disfavor."

request. We disagree with the broad rule urged by Sublimity and adopted by LUBA. That interpretation would give Sublimity *carte blanche* to preclude the very uses for which the land is designated in the comprehensive plan and for which it has been zoned, on the basis of any phrase plucked from the entire text of the comprehensive plan. It is difficult to imagine anything more destructive of the orderly process of land use planning.

 Only those general policies contained in the comprehensive plan that are consistent with the plan designation and zoning classification[7] may be used at the subdivision approval stage to regulate development of urbanizable land. It must be conclusively presumed that general policies stated in the comprehensive plan have been considered and found inapplicable by the time property is zoned for a use that is inconsistent with the general policy. That is to say, the general policy to preserve land presently in agricultural use for that use must have been considered and found inapplicable when it was zoned for single-family residential use. It may be that there are other impediments to approval of this subdivision that are properly governed by specific requirements contained in the subdivision ordinance, or that other general policies can be validly applied in such a way as to require modification of the proposed development or to postpone it. But that is not the question here.

The policy favoring retention of agricultural land as agricultural land would, if implemented, prevent residential development. That policy is inconsistent with the plan designation of residential and zoning classification of SFR, because not only has the land been included within an acknowledged UGB, but the thrust of statewide planning Goal 3 and ORS chapter 215 is that residential development is incompatible with preservation of agriculture on the same land.

 The principle of fair notice at stake here is similar to that invoked in *Commonwealth.* Purchasers of property as well as neighboring landowners are entitled to notice

---

[7] Plan and zoning designations must match, in that the zoning classification may not permit more intensive uses that that permitted by the comprehensive plan. *Baker v. City of Milwaukie,* 271 Or 500, 506, 533 P2d 772 (1975); *See also Marracci v. City of Scappoose,* 26 Or App 131, 552 P2d, *rev den* (1976).

that land that is apparently developable is actually subject to being retained indefinitely in what amounts to another zoning classification. As we said in *Commonwealth,* an applicant "should not be put in a position of having * * * success or failure determined by guessing under which shell lies the pea." 35 Or App at 399. In its final opinion and order, LUBA reasoned that Sublimity had not, merely by designating and zoning the land as residential, indicated a decision "to allow development on petitioners' property without a further determination that such development was appropriate at this time." Some such further determination would seem to be contemplated at some point after UGB acknowledgment, as part of the process of converting "urbanizable" land to urban uses, according to the Goal 14 component of the comprehensive plan. It does not follow, however, that the determination of appropriateness may be made on the basis of a general policy utterly inconsistent with the plan designation and the zoning classification, actions that had the effect of taking the land out of the urbanizable class subject to Goal 14 conversion factors. The message conveyed by the city's comprehensive plan and map and the zoning classification is that this land is *residentially* developable, subject, however, to general policies' and ordinances consistent with residential development.

As LUBA noted, petitioners do not raise the inadequacy of the policies, in general, as conversion standards. Rather, petitioners focus their attack on the policy favoring retention of agricultural land. We therefore do not decide the question whether other policies, for example, those favoring retention of open space or concentration of development near the city core, could be validly applied here. We hold only that a general policy in a comprehensive plan favoring retention of agricultural land within an acknowledged UGB may not be applied to preclude development on land designated and zoned for residential use.

We conclude that LUBA erred in substance in not rejecting Sublimity's application of the general policy favoring retention of agricultural land. On remand, LUBA is to enter a new remand order consistent with this opinion.

Reversed and remanded with instructions to enter an order consistent with this opinion.