Argued and submitted November 25, 1981, affirmed June 16, 1982

LEE et al,
*Petitioners,*

*v.*

CITY OF PORTLAND et al,
*Respondents.*

(LUBA No. 80-142, CA A21195)

646 P2d 662

Edward J. Sullivan, Portland, argued the cause for petitioners. With him on the brief was O'Donnell, Sullivan & Ramis, Portland.

Ruth Spetter, Deputy City Attorney, Portland, argued the cause for respondent City of Portland. With her on the brief was Christopher P. Thomas, City Attorney for City of Portland.

Mary J. Deits, Assistant Attorney General, Salem, waived appearance for respondent Land Conservation and Development Commission.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Petitioners appeal a decision of the Land Use Board of Appeals (LUBA), affirming the Portland City Council's (city) order granting a conditional use permit to build a fire station. In their eight assignments of error, petitioners raise four basic issues: (1) whether the relevant city ordinances provide sufficient standards to satisfy the requirements of ORS 227.173(1), (2) whether the city's findings satisfy the requirements of ORS 227.173(2), (3) whether the city made sufficient findings to show compliance with statewide planning goals, and (4) whether the city complied with its own ordinances in granting the conditional use permit. We affirm.

On November 6, 1979, the city obtained an option to purchase vacant lots at Taylors Ferry Road and 4th and 5th Avenues for use as a fire station. On November 21, the city exercised its option, and on December 5, the city council approved purchase of the land. On December 12 and 13, the Portland Fire Bureau notified the South Burlingame Neighborhood Association and Collins View Neighborhood Association that it was contemplating building the fire station. On January 25, 1980, the city received a warranty deed to the property.

On May 16, 1980, the Department of Public Works applied for a conditional use permit to build the fire station. A hearings officer granted the permit on July 18, after considering testimony about the noise, traffic, alternatives sites and potential park use issues raised by the application. That decision was appealed to the city council. After reviewing the matter *de novo*, the council entered a final order on September 30, denying the appeal and granting the conditional use.

■ Petitioners contend that LUBA erred in concluding that ORS 227.173(1) does not require standards more detailed than those contained in various provisions of the Portland City Code.[1] Petitioners characterize the applicable code standards as vague and completely lacking specificity. ORS 227.173(1) states:

---

[1] Petitioners maintain that the statute requires that the ordinance set forth a tabulated list of considerations pertinent to the land use decision at issue. In

"Approval or denial of a discretionary permit application shall be based on standards and criteria, which shall be set forth in the development ordinance and which shall relate approval or denial of a discretionary permit application to the development ordinance and to the comprehensive plan for the area in which the development would occur and to the development ordinance and comprehensive plan for the city as a whole."

Reduced to its essentials, ORS 227.173(1) requires that development ordinances set forth reasonably clear standards for discretionary permit applications. The intent of the statute is to insure that those standards be the sole basis for determining whether a discretionary permit application is approved.

■ The city maintains that several ordinances set forth standards satisfying ORS 227.173(1). The land purchased by the city was in R5 and A2.5 zones. The city code provides that in an R5 zone:

"Governmental structures and land uses local, state or federal which are essential to the functioning and servicing of residential neighborhoods. * * *" Portland City Code § 33.26.240(9).

City Code section 33.30.250(9) provided the same standards for zone A2.5. A reasonable reading of the phrase "essential to the functioning and servicing of residential neighborhoods" leaves little room for any conclusion but that a conditional use may not be granted unless the governmental structure or land use is of the utmost importance. A fire station would seem to constitute a classic example of a governmental land use essential to the functioning of a residential neighborhood. Thus, under the facts here, we conclude that section 33.26.240(9) of the code provided the council with a reasonably clear standard for determining whether the conditional use should be granted.

---

construing ORS 227.173(1), our task is to give effect to the intent of the legislature. *Ochoco Const. v. LCDC,* 56 Or App 32, 40, 641 P2d 49, *rev allowed* 293 Or 103 (1982) (citing *Rivers v. SAIF,* 45 Or App 1105, 1108, 610 P2d 288 (1980)). The most persuasive indicator of that intent is the words of the statutes themselves. *State ex rel Cox v. Wilson,* 277 Or 747, 750, 562 P2d 172 (1977); *Ochoco Const. v. LCDC, supra,* 56 Or App at 40. Nothing in the language of the statute here suggests the legislature intended that the development ordinance contain "a tabulated list of considerations pertinent to the development before the city takes action on a permit."

■     The second code standard the city relies upon is section 33.106.010, which provides that, before permitting a conditional use:

> " * * * [i]t shall be determined that the use at the particular location is desirable to the public convenience and welfare and not detrimental or injurious to the public health, peace or safety, or to the character and value of the surrounding properties. * * *
>
> " * * * * *
>
> "In permitting conditional uses, the minimum or maximum requirements specified for each such use in the respective zones may be increased and other conditions and restrictions if necessary to protect the public interest and the surrounding properties may be imposed. * * *"

Although the standard is phrased in general terms, it does require a careful examination to insure that the proposed use will benefit the neighborhood and surrounding properties, especially when construed with other code provisions governing conditional uses.[2]

Before granting the permit, the hearings officer was required to demonstrate: "The manner in which the decision is consistent with the public need, and the extent to which the general welfare of the public is served by the decision." Portland City Code § 33.114.060(b)(2). Contrary to petitioner's view, this provision is not merely procedural. Rather, it dictates what standards govern and what findings must be made before a decision is reached. A provision of the city code governing appeals from the hearings officer's findings mandates that the council follow the same standards in considering the appeal. Portland City Code § 33.114.070(4)(d).

■     In summary, ORS 227.173(1) does not require perfect standards, but only standards that are clear enough for an applicant to know what he must show during the application process. *See Sun Ray Dairy v. OLCC,* 16 Or App 63, 72, 517 P2d 289 (1973). Although the standards

---

[2] Petitioners argue that the legislative history of ORS 227.173(1) reveals that it was intended as an "antidote" to *Anderson v. Peden,* 284 Or 313, 587 P2d 59 (1978), which they contend allowed the use of vague legislative standards such as those contained in section 33.106.010 of the city code. Petitioners fail to direct our attention to any legislative source supporting their view.

governing the grant of the conditional use here may not have been perfect, they did inform interested parties of the basis on which applications would be granted or denied. Under the various city code provisions, the applicants were required to demonstrate how the conditional land use was essential to the functioning of the residential neighborhood, section 33.26.240(9), and the degree to which the use would meet the public need, convenience, health and welfare, sections 33.114.060(b) and 33.106.010. In addition, the public interest was protected by the city's option of imposing conditions on the granting of the conditional use. Portland City Code § 33.106.010. We hold that the requirements of ORS 227.173(1) were satisfied here.

Petitioners contend that LUBA erred in concluding that the city had complied with ORS 227.173(2), which provides:

"Approval or denial of a permit application shall be based upon and accompanied by a brief statement that explains the criteria and standards considered relevant to the decision, states the facts relied upon in rendering the decision and explains the justification for the decision based on the criteria, standards and facts set forth."

The "brief statement" must contain: (1) an explanation of the standards considered relevant to the decision, (2) a statement of the facts supporting the decision and (3) an explanation of how the standards and the facts dictate the decision reached. The words "brief statement" indicate a legislative intent that the statement need not be exhaustive, but rather that it contain a summary of the relevant factors.

■ The order allowing the conditional use meets the first requirement of ORS 227.173(2). In a section entitled "Code Considerations," it sets out quotations from the relevant standards governing the grant of conditional uses for governmental structures. Although not exhaustive, the order also sets out the facts underlying the decision granting the conditional use. Petitioners challenge the findings of fact, contending that there were contested issues not resolved by the broad wording of the findings. If the legislature had intended that the city resolve every conflicting fact in the record, we think that body would have

chosen language other than "brief" to describe the required statement. Moreover, despite petitioners' contentions to the contrary, the city's findings do contain facts.[3] Although the facts are stated in somewhat conclusory form, we think that they satisfy the "brief statement" test of ORS 227.173(2).

We also find that the order contains a sufficient statement of why the relevant standards and facts dictate the decision reached by the council. Specifically, findings 6f and 6g analyze how the conditional use standards are met by the facts presented.[4] Admittedly, findings 6i and 6j are less detailed, but, when considering them together with the other findings, we conclude that they constitute a sufficient "brief statement." ORS 227.173(2).

Petitioners contend that the city's approval of the conditional use, prior to adopting a comprehensive plan, violated ORS 227.175(3), which provides:

"The application shall not be approved unless the proposed development of land would be in compliance with the comprehensive plan of the city. * * *"

---

[3] For example, finding 6f, *infra* n 4, cites the testimony of a fire official that it would be much more economical to relocate the existing fire station than to build a new one. In finding 6g the city specifically responded to "[t]he opponents' claim that traffic on S.W. Taylors Ferry will prevent the site from being a good location for a fire station."

[4] Finding 6f states:

"A fire station at this location is desirable to the public convenience and welfare because it will enable the Fire Bureau to provide adequate and necessary fire protection and emergency services to areas of southwest Portland not now receiving these essential services, as well as to continue serving as large as possible an area now served by Engine Company No. 10, including the area immediately surrounding this site.

"Relocating Engine Company No. 10 to this site rather than locating a new engine company farther to the southwest is desirable to the public convenience and welfare in that an adequate level of fire protection and emergency services can be provided at a substantially lower dollar cost to the public. As testified to, before the Hearings Officer, by Battalion Chief Bob Wilkinson, establishing an entirely new engine company in addition to the existing Company No. 10 would cost the public at least $350,000 to $400,000 per year in additional wages alone."

Finding 6g follows the pattern of finding 6f by first stating generally how the Code standards were met and then proceeding to analyze the conflicting facts in more detail.

Petitioners' contention is not well taken. ORS 197.275(1) provided:[5]

> "Comprehensive plans and zoning, subdivision, and other ordinances and regulations adopted prior to October 5, 1973, shall remain in effect until revised under ORS 197.005 to 197.430 and 469.350. It is intended that existing planning efforts and activities shall continue and that such efforts be utilized in achieving the purposes of ORS 197.005 to 197.430 and 469.350."

■ Under former ORS 197.275(1), the Portland zoning code adopted on April 2, 1970, remained in effect until the city adopted a new comprehensive plan. *Neuberger v. City of Portland,* 288 Or 155, 164, 603 P2d 771 (1979); *see also McIntyre-Cooper Co. v. Bd. of Comm.,* 55 Or App 78, 83, 637 P2d 201 (1981), *rev den* 292 Or 589 (1982). The city properly considered the conditional use before the adoption of its comprehensive plan. ORS 197.275(1).

Petitioners contend that LUBA erred in concluding that the city had complied with the statewide planning goals and that the city's findings and conclusions were sufficient and supported by substantial evidence.

■ Petitioners argue that LUBA erroneously confused "findings" with "evidence" in examining the sufficiency of the city's findings on statewide planning goals and that LUBA's decision "represents a policy departure for both LUBA and LCDC, as well as being otherwise unlawful. ORS 183.482(8)(b)(B)." Petitioners direct our attention to several LUBA decisions which generally address the necessity and adequacy of findings in certain fact situations. Merely because certain unspecified findings were found to be inadequate to support an annexation of land or to support street extension for a new development, does not establish that the city's findings were inadequate to support the conditional use proposed here. Indeed, the amount of detail required for any particular statewide goal finding depends on the facts underlying the land use request at issue. *See Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 21, 569 P2d 1063 (1977) ("No particular form [of findings] is required, and no magic words need be employed.").

---

[5] ORS 197.275 was repealed by Or Laws 1981, ch 748, § 56 subsequent to the city's decision.

We have considered the specific goal violations alleged by petitioners and conclude that they lack any merit.

■ Petitioners contend that LUBA erred in finding that petitioners had not been prejudiced by the city's alleged failure to notify the local neighborhood associations of the city's purchase of the fire station site. Section 3.96.060(a)(2) of the Portland City Code required 30 days' advance notice of any action affecting the livability of the neighborhood be given to local neighborhood associations. We need not reach the issue whether the code was violated, because petitioners have failed to demonstrate any prejudice resulting from the alleged notice violation. LUBA may not reverse or remand a land use decision unless there has been a showing of prejudice to "the substantial right of the petitioner." Or Laws 1979, ch 772, § 5(4)(a)(B). As previously stated, the crucial event in the planning process was the application for conditional use. Petitioners received notice of and fully participated in the conditional use process. Thus, they cannot seriously contend that they suffered any prejudice from lack of notice.

■ Petitioners contend that LUBA erred in concluding that the city's decision comported with Portland City Code section 33.114.060(b) and the conditional use standards in section 33.106.010. Petitioners also urge that the city's decision failed to contain adequate findings and conclusions, but conclude that the city produced substantial evidence demonstrating why a fire station was needed at that particular location. The findings expressly state that the site is necessary, because (1) it allows response in areas currently served as well as in areas farther southwest; (2) the station also will serve the immediately adjacent area; (3) the relocation permits the servicing of two areas with one station at a considerable cost savings; (4) the proposed site is close to a major intersection, permitting speedy service in all directions; and (5) two areas can be serviced, implementing the fire bureau's service plan. The record supports the findings.

■ Petitioners contend that LUBA erred in concluding that the city's generalized response to contested issues of fact was adequate. LUBA found that, although the city's

findings were "sketchy," when viewed as a whole "and when combined with the record, they do indicate that the city did consider the [petitioner's] challenges * * *." After reviewing the findings and the record, we conclude that the city sufficiently addressed petitioners' concern in a manner that explains the facts and the reasons underlying the decision and why alternative proposals were not chosen.

■    Petitioners object to the conditions imposed in the conditional use permit that a sidewalk and warning lights be provided and constructed to city engineer standards. Petitioners characterize these conditions as constituting "an improper delegation," not shown to relate "to any public facilities need." However, petitioners fail to cite any authority prohibiting delegations of authority regarding street improvement standards, sidewalk construction standards and traffic warning lights. The city maintains that the agencies mentioned in the conditions have technical specifications the fire bureau must meet in constructing the station. Absent authority to the contrary, or absent a showing that such technical specifications do not exist, we decline to hold the conditions imposed were improper.

Affirmed.