Argued and submitted June 14, affirmed July 3, 1991

## OSWEGO PROPERTIES, INC.,
*Petitioner,*

*v.*

## CITY OF LAKE OSWEGO,
*Respondent.*

## (LUBA 91-002; CA A69616)

814 P2d 539

Stephen T. Janik, Portland, argued the cause for petitioner. With him on the brief were Richard H. Allan and Ball, Janik & Novack, Portland.

Jeffrey G. Condit, City Attorney, Lake Oswego, argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

## WARREN, P. J.

Petitioner seeks review of LUBA's decision affirming the City of Lake Oswego's denial of petitioner's application to develop a multi-family dwelling project. The city denied the application on the basis of its findings and conclusion that petitioner's proposal does not satisfy the open space preservation requirements of the city's land use regulations. Specifically, the city concluded that the preservation of six trees and their surroundings was necessary to satisfy the requirements.

An overview of the applicable city provisions is necessary to an understanding of the issues. "Open space" is defined in section 8.015(1) of the city's development standards:

"Land to remain in natural condition for the purpose of providing a scenic, aesthetic appearance; protecting natural processes; providing passive recreational uses or maintaining natural vegetation. Open space land shall be permanently reserved by common ownership among the owners of a development, dedication to the public, or by other appropriate means."

Section 8.020(1) of the standards provides, as relevant:

"All major residential development * * * shall provide open space or park land approved by the City in an aggregate amount equal to at least 20 percent of the gross land area of the development."

Section 8.035(4) provides, in part:

"Lands shall be selected by the City for reservation as open space areas or parks in accordance with the following priorities:

"a. Distinctive Natural Areas (Including Rare and Endangered Species) identified in the Comprehensive Plan.

"* * * * *

"e. Specimen trees.

"* * * * *

"j. Others."

Section 8.035(6) provides:

"Options for Meeting Park and Open Space Requirements

"a. The entire amount of the required percentage of park/open space land may be approved as open space or park. In such a case, the park and open space acquisition fee may be waived; the development fee will be charged.

"b. If the entire amount of land is approved and developed, according to the Comprehensive Plan and City standards, both the acquisition fee and the development fee may be waived. If the project were not developed, the City Council will, after public hearing, assess the development charge.

"c. If only a portion of the required percent of park and/or open space land is approved by the City then a pro-rated share of the acquisition fee may be waived. The development fee will be charged.

"d. If, in the situation described in c above, the approved portion is developed under the Plan and City standards, a pro-rated share of the acquisition fee and of the development fee may be waived.

"e. If no park or open space lands are approved, the full amount of both the acquisition and the development fees will be assessed."

In its application, petitioner proposed to preserve one tree and to satisfy the remaining open space requirement by paying the acquisition and development fee under section 8.035(6)(e). The city rejected that proposal and concluded that, to satisfy the standards, the project would have to preserve (1) a Japanese Lace Leaf Maple tree and "its existing immediate environment," as a distinctive natural area identified in the comprehensive plan; (2) a Douglas Fir and a Big Leaf Maple, as specimen trees; and (3) three other trees that the city found came within the "other" open space category in section 8.035(4)(j).

■ Petitioner argues in its first assignment that the city misconstrued the standards and that, under a correct interpretation, an applicant may elect to pay an acquisition and development fee rather than to preserve open space. Petitioner stresses the language of section 8.035(6), which contains repeated references to city *approval* of open space land and which contains the word "options" in its caption. Petitioner reasons:

"Use of the word 'approved' rather than a word such as 'required,' with respect to dedication of open space, indicates that it is the *applicant* who *proposes* reservation of Park and

open space land subject to *approval* by the city. The applicant *always* has the option of satisfying the Park and open space standard by paying the fee." (Emphasis petitioner's.)

The city and LUBA disagreed with petitioner's interpretation. So do we. Section 8.035(6) does not exist in a vacuum. Section 8.020 provides in mandatory terms that developments *shall* provide the required percentage of open space. Section 8.035(4) provides that *the city* shall select land for open space "reservation." In that regulatory context, section 8.035(6) does not mean that preservation of open space and payment of a fee are alternative options between which an applicant may freely choose. The ordinance as a whole mandates preservation when it is possible. Therefore, the list of options in section 8.035(6) must be read as a descending scale, in which payment of fees in lieu of open space preservation is permissible only when no preservation is possible.

Petitioner also contends that the city's decision does not comply with ORS 227.173, which provides, in part:

"(1)   Approval or denial of a discretionary permit application shall be based on standards and criteria, which shall be set forth in the development ordinance and which shall relate approval or denial of a discretionary permit application to the development ordinance and to the comprehensive plan for the area in which the development would occur and to the development ordinance and comprehensive plan for the city as a whole.

"(2)   Approval or denial of a permit application shall be based upon and accompanied by a brief statement that explains the criteria and standards considered relevant to the decision, states the facts relied upon in rendering the decision and explains the justification for the decision based on the criteria, standards and facts set forth."

Petitioner maintains that, under LUBA's interpretation, section 8.035(6), standing alone, "lacks standards for determining when an applicant may pay fees rather than dedicate land" and therefore runs afoul of ORS 227.173(1). LUBA construed section 8.035(6) together with the other applicable provisions of the ordinance. Petitioner disagrees with that construction and argues that LUBA's interpretation "effectively nullifies" the options in section 8.035(6) that

allow for less than 20 percent of open space preservation or for payment of fees in lieu of any preservation.

Nothing in section 8.035(6) itself suggests that all of the options that it lists must be *equally* available to applicants in order for them to have some effect. Moreover, sections 8.020(1) and 8.035(4) are in *pari materia* with section 8.035(6), which must be construed and applied in their light. They articulate standards and criteria that satisfy the requirement of ORS 227.173(1) and that support the denial of petitioner's application. We reject the first assignment of error.

■ Petitioner's second assignment takes issue with the city's determination that the Japanese Lace Leaf Maple and its immediate environment must be preserved as a distinctive natural area. The city concluded that, under petitioner's proposal, a 44-foot wall that would be placed in proximity to the tree would effectively destroy the tree's environment. Petitioner argues that the distinctive natural area designation in the plan names only the tree and does not refer to its surroundings. Therefore, petitioner reasons, only the tree is subject to the open space preservation requirement. LUBA rejected petitioner's argument and concluded that, under the definition of "open space" in section 8.015 of the city's standards, the need to maintain "aesthetic appearance" and "natural vegetation" justified the protection of the tree's environment as well as the tree itself.

■ Petitioner contends that the city's findings concerning the tree and its environment do not satisfy ORS 227.173(2) and that petitioner's due process rights have been violated, because "[w]hat [the] 'open space values' are is not clear from either the city's finding, or from LUBA's opinion." Petitioner explains that the "aesthetic appearance" rationale is inadequate, because the present immediate environment of the tree "consists of concrete walkways, a wood deck, poorly maintained landscaping, and a residence that is at best ordinary in appearance." The "natural vegetation" explanation also fails, in petitioner's view, because the surrounding vegetation is not expressly made a part of the distinctive natural area designation in the plan and the finding does not state why the vegetation is essential to the protection of the area or how the proposed development "would negatively affect it."

The city's determination that a 44-foot wall could affect "aesthetic appearance" is based on and applies a clear standard. Petitioner's implication that the *present* surroundings do not deserve preservation is not an opinion that the city is required to share or to regard as relevant to a *development* proposal.

The fact that the tree alone is mentioned in the plan is not determinative of whether the immediate surrounding area should also be designated as open space. The specific criteria in the section 8.015 definition of "open space" are obviously relevant to whether the area around the tree qualifies as "open space."

Finally, the specificity that petitioner maintains is lacking in the city's standards and its findings goes far beyond anything that ORS 227.173 or due process requires. We said in *Lee v. City of Portland,* 57 Or App 798, 802, 646 P2d 662 (1982), that, to satisfy ORS 227.173(1), standards need only be "clear enough for an applicant to know what he must show during the application process." The substance and import of the city's standards are clear, and the explanation of their application in the findings is equally clear. Indeed, petitioner's argument illustrates that it almost takes an act of will to misunderstand what the standards require and how they justify the city's decision in the light of the facts that it found.

■ In its third assignment, petitioner contends that LUBA erred in sustaining the city's determination that the Douglas Fir and the Big Leaf Maple are specimen trees. Petitioner again relies on ORS 227.173(2), and the reliance is again misplaced. Petitioner also argues that the findings are not supported by substantial evidence in the whole record. Our task in reviewing that argument is to determine whether LUBA properly understood and applied the substantial evidence test, not to make an independent assessment of the kind that we undertake in a direct review of agency findings. *Cusma v. City of Oregon City,* 92 Or App 1, 757 P2d 433 (1988). It did.

■ Petitioner asserts in its remaining assignment that the "category of 'other' open space under * * * [section] 8.035(4)[(j)] is impermissibly vague and violates ORS

227.173(1)." LUBA concluded that, read together with other provisions of the ordinance, particularly the definition of "open space" in section 8.015 and the requirement of section 8.020 that 20 percent of a development be dedicated to open space, the "other" category is specific enough to satisfy ORS 227.173(1). Again, we agree with LUBA and disagree with petitioner's effort to create indefiniteness by extracting words in the ordinance from their context.

Affirmed.