Argued and submitted July 18, reversed and remanded for reconsideration
September 14, 1994

BCT PARTNERSHIP,
*Respondent,*

*v.*

CITY OF PORTLAND,
Barry D. Schlesinger and BPM Associates,
*Petitioners.*

(LUBA 93-226; CA A84434)

881 P2d 176

Kathryn Beaumont Imperati argued the cause for petitioner City of Portland. With her on the brief was Adrianne Brockman.

Steven L. Pfeiffer argued the cause for petitioners Barry D. Schlesinger and BPM Associates. With him on the brief were Michael R. Campbell and Stoel Rives Boley Jones & Grey.

Stephen T. Janik, Richard H. Allan and Ball, Janick & Novack waived appearance for respondent.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Petitioner BPM Associates applied to the City of Portland for a conditional use permit to operate a parking garage.[1] The city granted the permit. BCT Partnership (respondent) appealed the city's decision to LUBA. LUBA reversed, and petitioners seek review. We reverse and remand.

LUBA concluded, and it is undisputed, that the approval of the permit depended on the consistency of the application with section 2-7(C) of the city's Downtown Parking and Circulation Policy (DPCP). That section provides:

> "The City may approve new structured short term parking as long as the City finds that it is consistent with the *City's short term parking strategy*." (Emphasis supplied.)

The city council found that, "[a]lthough there is no document labelled 'Short-Term Parking Strategy' " in the city's land use legislation, the city has effectively adopted such a strategy "through a number of separate legislative enactments." The council's order proceeded to enumerate and discuss the provisions it regarded as applicable, in part by reference to an earlier decision in which *respondent* "was the proponent of additional parking." The council explained:

> "The City's short-term parking strategy is to provide sufficient short-term parking to support the planned intensity of uses within the Downtown area, particularly within the retail core of Downtown. That is, a proposal for additional short-term parking within the area subject to the DPCP is consistent with the City's short-term parking strategy only if the applicant demonstrates that there is a need for the additional parking.

> "Taken together, these legislative enactments establish a short-term parking strategy of ensuring an adequate supply of short-term parking, particularly within the retail core. Under this strategy, short-term parking should generally not be approved in areas where it is not needed. Because of the air pollution and other constraints on the supply of parking

---

[1] We use the designations of the parties in this court. Petitioner Schlesinger is a principal of BPM, who appeared on behalf of it in the city proceeding. The City of Portland has appeared separately from the other petitioners, but their assignments and arguments overlap. Because differentiation is unnecessary in this opinion, we will refer to all of the petitioners as such collectively.

Downtown, approval of additional short-term parking where it is not needed would necessarily detract from the City's policies of encouraging a vibrant Downtown that includes retail, professional office, restaurant, and other uses that depend upon an adequate and affordable supply of short-term parking."

The city concluded that the present proposal was consistent with its "short term parking strategy," as reflected in the provisions that it cited.

ORS 227.173(1) and (2) provide:

"(1)   Approval or denial of a discretionary permit application shall be based on standards and criteria, which shall be set forth in the development ordinance and which shall relate approval or denial of a discretionary permit application to the development ordinance and to the comprehensive plan for the area in which the development would occur and to the development ordinance and comprehensive plan for the city as a whole.

"(2)   Approval or denial of a permit application or limited land use decision shall be based upon and accompanied by a brief statement that explains the criteria and standards considered relevant to the decision, states the facts relied upon in rendering the decision and explains the justification for the decision based on the criteria, standards and facts set forth."

LUBA concluded that the city's decision was in conflict with that statute. It reasoned that, because the city had no provision in its ordinance expressly identified as a short-term parking strategy, the approval criterion under section 2-7(C) was not "set forth" in the ordinance. LUBA further concluded that the statute was not satisfied by the city's attempt to "deduce or derive" the parking strategy from other city legislative provisions. LUBA rejected petitioners' contrary arguments, and explained:

"[Petitioners] also argue the challenged decision complies with ORS 227.173(1) because the phrase 'short term parking strategy' is 'sufficiently definite to inform interested parties of the basis on which the application would be approved or denied.' *[S]ee Oswego Properties, Inc. v. City of Lake Oswego*, 108 Or App 113, 814 P2d 539 (1991); *Lee v. City of Portland*, 57 Or App 798, 646 P2d 662 (1982). According to [petitioners], the standard of 'consistency with

the City's short term parking strategy' is more definite than the 'desirable to the public convenience and welfare' standard upheld in *Lee*, 'because the former is a reference to an identifiable and existing strategy, whereas the latter is a subjective standard that can only be articulated in the context of specific proposals.' *Id*.

"* * * * *

"The DPCP 2-7(C) requirement that a parking structure be 'consistent with the City's short term parking strategy' does not, in itself, satisfy ORS 227.173(1) because it explains absolutely nothing about the basis on which such an application will be approved or denied. Of course, this deficiency would be remedied if there were other provisions set out in the city's development ordinances that identified for interested parties what the city's 'short term parking strategy' is. If that were the case, DPCP 2-7(C) would be applied in conjunction with such other provisions and ORS 227.173(1) would be met. However, that is not the case here. No provision of the city's development ordinances sets out the city's 'short term parking strategy.' Rather, the challenged decision determines the city's 'short term parking strategy' is something that *underlies*, or can be deduced from, 11 provisions in the DPCP, Central City Plan and Downtown Plan and can be announced for the first time in the city's decision on a permit application. This violates the requirement of ORS 227.173(1) that permit standards and criteria *themselves* must be set out in the city's development ordinances." (Emphasis in original; footnotes omitted.)

LUBA further concluded, in a footnote:

"As we explain, *supra*, no provision in the city's plan or land use regulations explicitly states it is the city's 'short term parking strategy.' We do not decide whether during the course of a quasi-judicial permit proceeding and with advance notice to the parties, the city could, consistent with ORS 227.173(1), identify one or more existing provisions in the PCC or plan as constituting the 'short term parking strategy' referred to in DPCP 2-7(C), because that is not what the city did here."

In their first assignment to us, petitioners contend that LUBA erred in the foregoing conclusions; they argue that the city did not have to have a legislative provision expressly denoted as its short term parking strategy, if the

strategy could be identified from provisions of the city's ordinances that are on point. We agree.

LUBA relied on *Lee v. City of Portland*, 57 Or App 798, 646 P2d 662 (1982), and *Oswego Properties, Inc. v. City of Lake Oswego*, 108 Or App 113, 814 P2d 539 (1992). We said in *Lee*, and reiterated in *Oswego Properties*, that ORS 227.173(1) requires only that a city's standards and criteria be set forth with enough specificity to enable the participants "to know what * * * must [be shown] during the application process." 57 Or App at 802; *see also* 108 Or App at 119.

■ As indicated in *Lee* and *Oswego Properties*, we do not construe ORS 227.173(1) to require standards and criteria to be set forth in an ordinance with a level of specificity that *states* which standards are applicable to all particular circumstances and how they might apply. ORS 227.173(2) requires that city decisions on permit applications explain, *inter alia*, "the criteria and standards considered relevant to the decision." There would be no need for such an explanation in the process of acting on particular applications, if the ordinance itself were required to be as specific in its articulation of applicable standards and criteria as LUBA indicated and, thereby, to leave nothing to be interpreted or explained in the decisional setting.

■ We conclude that, if an ordinance contains provisions that can reasonably be interpreted and explained as embodying the standards and criteria applicable to the particular decision, it is specific enough to satisfy ORS 227.173. Further, it is specific enough to impart the knowledge for which *Lee v. City of Portland, supra*, and *Oswego Properties, Inc. v. City of Lake Oswego, supra*, call. If ordinance provisions can reasonably be interpreted as the applicable ones, the proponents and opponents of the permit can reasonably be expected to discern their potential significance.[2]

---

[2] *Lee* and *Oswego Properties* suggest that the principal function of ORS 227.173(1) is to assure that the parties are provided with advance notice of the applicable law. We now question whether that suggestion is correct. ORS 227.173(1) says nothing about notice, but seems to have the purpose of assuring that permit decisions will be based on pre-existing legislation. Moreover, other statutes in the same scheme relate to notice about the law. *See* ORS 227.175(5); ORS 197.763(3)(b). Nonetheless, this case is concerned with the level of specificity that ORS 227.173(1) requires in the local legislation to which it relates. *Lee* and *Oswego Properties* correctly resolve that issue.

■■ We conclude that ORS 227.173 allows cities to identify the standards and criteria that apply to particular permits by interpreting more general provisions that are "set forth" in their land use legislation, and from which the specific applications reasonably follow. We also conclude that the city satisfied the statute here. The city's legislation includes sufficient general provisions to establish and identify the short term parking strategy that the city interpreted them as embodying; the issues to be addressed in the proceeding were sufficiently discernible from those provisions; and the city's order provided the necessary explanation under ORS 227.173(2) of what standards it was applying and how they applied.

We hold that the city's decision satisfies ORS 227.173, and we therefore agree with petitioners' first assignments. Given that conclusion, their second assignments — that LUBA erred by reversing rather than remanding the decision — succeed automatically or are mooted.

In their third assignments, petitioners contend that, in holding that the city's decision did not adequately explain how its approval conditions were consistent with its short-term parking requirements, LUBA failed to consider certain findings by the city. Because we remand on other grounds, that question is also remanded and is initially one for LUBA to consider.

Reversed and remanded for reconsideration.