Argued and submitted June 18, reversed and remanded December 30, 2009, respondent's petition for reconsideration filed January 12 and appellant' response to petition for reconsideration filed January 20, allowed by opinion March 17, 2010
See 234 Or App 343, 228 P3d 607 (2010)

STATE ex rel WEST MAIN TOWNHOMES, LLC,
an Oregon limited liability company,
*Relator-Appellant,*

*v.*

CITY OF MEDFORD,
a municipal corporation of the State of Oregon,
*Defendant-Respondent.*

Jackson County Circuit Court
074038Z2; A137828

225 P3d 56

Ryan J. Vanderhoof argued the cause for appellant. With him on the briefs was Mark S. Bartholomew.

Lori J. Cooper, Senior Assistant City Attorney, City Attorney's Office, argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

West Main Townhomes, LLC, (developer) filed a petition for an alternative writ of mandamus to compel the City of Medford to approve an application for a multifamily apartment complex. After the city filed an answer, the trial court held a show cause hearing and dismissed the mandamus action. Developer appeals. We review legal conclusions for errors of law and findings of fact for any evidence. ORS 34.240 (appeal from mandamus may be taken in like manner as appeal from an action); *State ex rel Coastal Management v. Washington Cty.*, 159 Or App 533, 540, 979 P2d 300 (1999) (review of facts); *State ex rel Gonzalez v. Washington*, 182 Or App 112, 115, 47 P3d 537 (2002), *holding modified on other grounds by Cole v. Board of Parole*, 220 Or App 362, 186 P3d 321 (2008) (review of legal issues). We reverse and remand.

In January 2007, developer filed an application with the city to develop property. ORS 227.179(1) provides that, if the city's governing body does not render a final decision on such an application within 120 days from the date of completion, the applicant may file a writ of mandamus.[1] One hundred and twenty days from the completion date in this case was June 6, 2007.

---

[1] ORS 227.179 provides:

"(1) Except when an applicant requests an extension * * *, if the governing body of a city * * * does not take final action on an application for a permit * * * within 120 days after the application is deemed complete, the applicant may file a petition for a writ of mandamus under ORS 34.130 in the circuit court of the county where the application was submitted to compel the governing body * * * to issue the approval.

"(2) The governing body shall retain jurisdiction to make a land use decision on the application until a petition for a writ of mandamus is filed. Upon filing a petition * * *, jurisdiction for all decisions regarding the application, including settlement, shall be with the circuit court.

"* * * * *

"(4) If the governing body does not take final action on an application within 120 days of the date the application is deemed complete, the applicant may elect to proceed with the application according to the applicable provisions of the local comprehensive plan and land use regulations or to file a petition for a writ of mandamus under this section. If the applicant elects to proceed according to the local plan and regulations, the applicant may not file a petition for a writ of mandamus within 14 days after the governing body makes a preliminary decision, provided a final written decision is issued within 14 days of the preliminary decision.

During negotiations, developer formally requested two extensions of the 120-day period as allowed by ORS 227.178(5).[2] The two extensions totaled 94 days, and, as a result, the 120-day period was extended to September 8, 2007. Although developer and the city continued negotiations after the September 8 deadline—during which developer provided a new proposal to the city—the city did not render a preliminary or final decision, nor did developer formally ask for another extension of the time period. On October 4, 2007, developer filed a petition for an alternative writ of mandamus.

At the mandamus hearing, the parties focused primarily on whether Medford Code (MC) section 10.453, which imposes requirements on development proposals, was impermissibly vague in violation of ORS 227.173.[3] The court took the matter under advisement and subsequently issued a letter opinion ruling that the ordinance was not impermissibly vague. The letter opinion also concluded, "Because the applicant chose to continue with the application after 120 days from submitting the application by submitting an additional proposal, the period was extended as per ORS 227.179(4)." The letter opinion was followed by a judgment dismissing developer's petition for the writ of mandamus.

Developer appeals, raising three assignments of error. First, it argues that MC 10.453 does not meet the "clear and objective" requirements of ORS 227.173. Second, it argues that the court erred in concluding that developer extended the 120-day time period set out in ORS 227.179(1). And third, it argues that, if the code does set out sufficiently clear and objective standards, the city did not provide evidence that developer's project did not meet them.

---

"(5) The court shall issue a peremptory writ unless the governing body or any intervenor shows that the approval would violate a substantive provision of the local comprehensive plan or land use regulations * * *. The writ may specify conditions of approval that would otherwise be allowed by the local comprehensive plan or land use regulations."

[2] ORS 227.178(5) provides:

"The 120-day period * * * may be extended for a specified period of time at the written request of the applicant. The total of all extensions may not exceed 245 days."

[3] The ordinance and statute are set out below. 233 Or App at 47.

■ ■    We begin with developer's second assignment, because it appears to deal with the trial court's mandamus jurisdiction. Developer maintains in that assignment that the court erred in concluding that developer extended the 120-day deadline by submitting an additional proposal. The purpose of that argument is to demonstrate that developer had the statutory authority to file a mandamus; under ORS 227.179(1) and ORS 227.178(5), an applicant, such as developer, can file a mandamus petition only when the governing body has not taken final action on the application within 120 days after the application is complete, unless the applicant has requested an extension in writing, and here, it is undisputed that developer never filed such a request. Thus, if the 120-day period had elapsed, mandamus was proper.[4]

The city acknowledges that it did not meet the 120-day deadline and developer did not file a written request for an extension. It maintains that, even so, developer was nonetheless precluded from filing the mandamus action. The key to this argument is the presumption that ORS 227.179(4) presents an "either/or" choice: after the city does not timely act, the developer can either proceed with the application, or it can file a mandamus, but it cannot do both. Therefore, the city argues, because developer proceeded with the application, its own mandamus action was not authorized and the court should not have entertained it.

We reject that interpretation of ORS 227.179(4). The city's reading of the first sentence of ORS 227.179(4) is correct. After the 120-day deadline has passed, the applicant may choose to continue with the application *or* file a petition for writ of mandamus. However, we reject the city's interpretation that the first sentence—"If the governing body does not take final action on an application within 120 days * * *, the applicant may elect to proceed with the application * * * or to file a petition for a writ of mandamus"—presents an either/or option such that, if the applicant continues with the

_____

[4] There is a curious aspect to this issue. Although the court concluded that the action was filed within the extended period, it nonetheless ruled on the merits of the writ, when, logically, if the petition for the writ was filed within the extended period the court had no jurisdiction.

application, it has waived the opportunity to file a mandamus. Rather, the "or" presents two options that are not mutually exclusive (as in, "if the speed limit is 60 mph, a driver may drive 60 or 55; she has the option"). As noted above, the second sentence of ORS 227.179(4) states, "If the applicant elects to proceed according to the local plan and regulations, the applicant may not file a petition for a writ of mandamus within 14 days *after* the governing body makes a preliminary decision * * *." (Emphasis added.) This clearly implies that, up until that preliminary decision has been made, the applicant *may* still file a petition for writ of mandamus, even after the 120-day deadline has passed and the applicant has continued negotiations with the governing body. Therefore, the applicant may continue negotiations after the 120-day deadline, without waiving his right to a mandamus action, until the governing body makes a preliminary decision.

■       This interpretation of ORS 227.179(4) complies with the objectives of the 120-day requirement and the mandamus procedure, which is to assure prompt governmental action on applications for the use of property and not to compel applicants who have been denied a statutory right to pursue a judicial remedy at the earliest possible opportunity instead of continuing negotiations. *State ex rel K. B. Recycling v. Clackamas Cty.*, 171 Or App 46, 51, 14 P3d 643 (2000). We therefore conclude that developer had statutory authority to file a mandamus action, and the trial court had jurisdiction to hear it.

■       Developer's first assignment of error challenges MC 10.453:

"All development shall be consistent with an adopted neighborhood circulation plan when such a plan is available for the project area. In such cases, the approving authority must find that proposed transportation improvements are consistent with the principles and objectives of the neighborhood circulation plan. Features, such as street arrangement and location, may depart from the adopted plan if it can be found that the principles and objectives of the adopted plan will be carried out. *If a neighborhood circulation plan does not exist, it shall be the developer's responsibility to demonstrate, prior to approval of a plan authorization, that development of the project site will not*

*impair the future development of a comprehensive neighborhood circulation system."*

(Emphasis added.) According to developer, the italicized sentence of that ordinance, which the parties agree is applicable in this case because the city has not created a neighborhood circulation plan, does not meet the clarity and objectivity requirements of ORS 227.173. That statute provides, in part:

> "(1)   Approval or denial of a discretionary permit application shall be based on standards and criteria, which shall be set forth in the development ordinance and which shall relate approval or denial of a discretionary permit application to the development ordinance and to the comprehensive plan for the area in which the development would occur and to the development ordinance and comprehensive plan for the city as a whole.
>
> "(2)   When an ordinance establishing approval standards is required * * *, the standards must be clear and objective on the face of the ordinance."

The parties agree that "an ordinance establishing approval standards is required" in this case. According to developer, the italicized sentence of MC 10.453 does not establish clear and objective standards; in essence, developer argues, the city had no neighborhood circulation system at the time of the application, so it was not possible to demonstrate that the plan would not "impair" it, unless the sentence means that developer must demonstrate that its plan could not impair *any conceivable* comprehensive neighborhood circulation system. In other words, according to developer, there are no standards at all, much less clear and objective ones. The city responds that the standards, in context, are sufficiently clear, and that, in any event, the statute requires only that the standards become clear during the period when the application process is being negotiated.

The parties appear to agree that the leading case interpreting the clear standard requirement of ORS 227.173 is *Lee v. City of Portland*, 57 Or App 798, 646 P2d 662 (1982). In that case, the city applied to build a fire station. The ordinances that were challenged under ORS 227.173 provided:

> "It shall be determined that the use at the particular location is desirable to the public convenience and welfare and

not detrimental or injurious to the public health, peace or safety, or to the character and value of the surrounding properties. * * *

"* * * * *

"In permitting conditional uses, the minimum or maximum requirements specified for each such use in the respective zones may be increased and other conditions and restrictions if necessary to protect the public interest and the surrounding properties may be imposed."

*Lee*, 57 Or App at 802. In rejecting the challenge, the court explained:

"ORS 227.173(1) does not require perfect standards, but only standards that are clear enough for an applicant to know what he must show during the application process. *See Sun Ray Dairy v. OLCC*, 16 Or App 63, 72, 517 P2d 289 (1973). Although the standards governing the grant of the conditional use here may not have been perfect, they did inform interested parties of the basis on which applications would be granted or denied."

*Lee*, 57 Or App at 802-03. In *Sun Ray Dairy*, 16 Or App at 71, the court stated, "An applicant for a license should be able to know the standards by which his application will be judged before going to the expense in time, investment and legal fees necessary to make [the] application."

■　　　Although the city argues that *Lee* stands for the proposition that standards can be vague and that they can be developed "during the application process," we are not persuaded that the case helps the city. The standards in *Lee*, while general, at least provide an applicant with a point of reference. They exist, as opposed to the nonstandards in the present case. And the citation to *Sun Ray Dairy*, as well as common sense, argue against interpreting the casual use of the phrase "during the application process" to give governing bodies the authority to articulate standards after the process is underway and an applicant has made significant investment. Further, as this court noted in *BCT Partnership v. City of Portland*, 130 Or App 271, 276 n 2, 881 P2d 176 (1994), "*Lee* * * * suggest[s] that the principal function of ORS 227.173(1) is to assure that the parties are provided with *advance notice* of the applicable law." (Emphasis added.)

■     The court in *BCT Partnership* went on to observe, "We now question whether that suggestion [that the purpose of ORS 227.173(1) is to provide advance notice] is correct. ORS 227.173(1) says nothing about notice, but seems to have the purpose of assuring that permit decisions will be based on pre-existing legislation." *Id.* Thus, whether the purpose of the statute is to provide advance notice or to ensure that decisions derive from preexisting legislation, the standards must be clear and objective when the application is submitted.

■■     The city also argues that the court correctly dismissed developer's petition for writ of mandamus on the ground that the proposal ran afoul of MC 10.452. That ordinance provides:

> "In determining the suitability of the proposed street arrangements, the approving authority shall take into consideration adopted neighborhood circulation plans and the eventual development of adjoining vacant property and the future provision of adequate, safe and convenient access to said adjoining property consistent with existing and proposed land uses."

Although the city did mention MC 10.452 in its "answer on return of alternative writ," and also mentioned the ordinance two times at oral argument before the court, it never developed an argument based on that ordinance, it did not mention that ordinance in its Response to Relator's Hearing Memorandum filed after oral argument, and it is clear that the trial court relied exclusively on MC 10.453. It is true that we have the discretion to affirm the court because it was "right for the wrong reason," that is, its decision was correct based on a rationale that the court itself did not rely on. We may do that when

> "(1) * * * the facts of record [are] sufficient to support the alternative basis for affirmance; (2) * * * the trial court's ruling [is] consistent with the view of the evidence under the alternative basis for affirmance; and (3) * * * the record materially [is] the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below."

*Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). Here, the city did not adduce evidence of what the "adopted neighborhood circulation plans and * * * eventual development of adjoining vacant property" were and, if it had done so, developer could have made a different record in response. In any event, MC 10.452 suffers from a flaw that is similar to the flaw in MC 10.453: it refers to the "*eventual* development of adjoining vacant property and the *future* provision of adequate, safe and convenient access to said adjoining property consistent with existing and proposed land uses."

We therefore conclude that the trial court had jurisdiction to hear developer's mandamus petition, but it erred in dismissing it.

Reversed and remanded.