Argued and submitted October 6, 2009, reversed and remanded February 17, petition for review denied June 11, 2010 (348 Or 415)

Douglas ZIRKER,
Viviann Zirker,
and Patricia Nippert,
*Petitioners,*

*v.*

CITY OF BEND
and Steidl Road, LLC,
*Respondents.*

Land Use Board of Appeals
2008217; A142288

227 P3d 1174

Pamela Hardy argued the cause and filed the reply brief for petitioners. With her on the joint brief were William H. Sherlock and Hutchinson, Cox, Coons, DuPriest, Orr & Sherlock, P.C.

Helen Eastwood argued the cause for respondents. With her on the joint brief were Bryant, Lovlien & Jarvis, P.C., and Mary A. Winters.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

SERCOMBE, J.

* Brewer, C. J., *vice* Edmonds, P. J.

**SERCOMBE, J.**

Petitioners seek review of an opinion and order of the Land Use Board of Appeals (LUBA). The opinion affirmed a decision of the City of Bend (city) that approved respondent's site plan for a triplex residence. LUBA determined that the city erred in granting respondent's requested variances to street improvement, property dedication, and special setback standards for the development. However, it concluded that an alternative waiver of those requirements by the city engineer was sufficient to sustain approval of the site plan. Petitioners, who are neighbors opposed to the triplex development, contend that LUBA erred in affirming the plan on that basis. They claim that the waiver standard applied by the engineer was too indefinite to pass muster under ORS 227.173(1). Petitioners also assert that the engineer lacks authority to waive the special setback standard. Respondent cross-assigns error to LUBA's determination that the city erred in granting the variances. We review the board's opinion and order to determine whether it is "unlawful in substance." ORS 197.850(9)(a). We conclude that LUBA correctly held that the waiver standard was lawful under ORS 227.173(1), but that the board erred in determining that the city engineer had authority to waive the setback standard. We also conclude that the cross-assignments of error lack merit. Accordingly, we reverse and remand the opinion and order to LUBA.

The controversy about the triplex development was not new to LUBA. Respondent sought city approval of a site plan for a triplex residence. The dwelling had already been constructed in an established neighborhood of single-family dwellings on Steidl Road, a local street in the City of Bend. Steidl Road is two blocks long, approximately 24 feet in width, and situated in a 40-foot right-of-way. The city's road standards require a 36-foot-wide pavement and a 60-foot right-of-way for a local street. The subject property and nearby lots are zoned to allow multi-family dwellings.

The city first approved construction of the triplex dwelling through an administrative process that did not include a public hearing. After that approval, respondent began to construct the building's foundation. Petitioners then

sought review of the administrative approval to LUBA. LUBA remanded the approval for findings on whether the decision could be made without a public hearing. *Zirker v. City of Bend*, 55 Or LUBA 188 (2007). Meanwhile, respondent completed construction of the triplex.

The city then adopted findings to explain the legitimacy of an administrative approval process for the triplex and the lack of a need to apply discretionary development standards. On review, LUBA rejected those findings and determined that discretionary standards did apply to the development. *Tallman v. City of Bend*, 56 Or LUBA 398 (2008).

Respondent then applied for site plan approval and the road improvement and setback variances under the applicable development code criteria. At the hearing before the city's hearings officer, the city's traffic engineer contended that the road improvement standards could be waived. The hearings officer approved the application, finding that respondent's proposal met the variance criteria and that, alternatively, the city engineer properly waived application of the setback and road improvement standards.

■       The issues in this case concern whether to excuse the development from the restrictions imposed by (1) a required special setback from Steidl Road, and (2) requirements that respondent dedicate and improve part of the lot's frontage on that road. Those requirements are imposed by the city's development code in order to facilitate future expansion and improvement of the road to applicable code standards.

The normal setback in the zoning district requires development to occur outside of a 10-foot setback from the front property line. The property line of respondent's lot adjoins the existing 40-foot right-of-way for Steidl Road. Because the right-of-way is below code requirements, a "special setback" is imposed by Bend Development Code (BDC) 3.5.300(B).[1] The normal 10-foot setback must be measured from that special setback, instead of from the front property

---

[1] BDC 3.5.300(A) explains that the purpose of the restriction is "to ensure that adequate right of way will be available for the appropriate street improvements as the city grows[.]"

line. As a result, the front porches and north front corners of the triplex intrude into the 10-foot setback area.

The city allows for variance to the special setback requirement, BDC 5.1.300(A), and respondent requested such a variance. The criteria for allowing a setback variance, as applicable to this case, are stated in BDC 5.1.300(B). They include whether the variance is "materially detrimental" to the stated purpose of the code requirement, that "existing physical and natural systems * * * will not be adversely affected" any more than normal, and that the hardship created by the setback requirement not be "self-imposed." Of particular relevance, BDC 5.1.300(B)(2) allows a variance to the setback restriction only when

"[a] hardship exists that is peculiar to the nature of the requested use, lot size or shape, topography, sensitive lands, or other similar circumstances related to the property or use over which the applicant has no control, and which are not applicable to other properties in the vicinity (e.g., the same land use district)[.]"

In addition to the special setback requirement, pursuant to BDC 3.4.200(M), in order to develop the property, respondent is required to dedicate an additional 10 feet of right-of-way along the property's frontage with Steidl Road. BDC 3.4.200(A) also requires that respondent widen the pavement of Steidl Road along that frontage by six feet. Respondent applied for a variance to those requirements, which could be granted only if "a required improvement is not feasible due to topographic constraints or constraints posed by sensitive lands or the project does not meet the exception standards listed herein." BDC 3.4.200(B). Additional criteria for that variance are stated in BDC 5.1.400(B).

The hearings officer determined that the improvements met the applicable criteria and granted the requested variances. On review, LUBA disagreed and concluded that the condition of the property did not justify the allowance of either variance. We concur with LUBA's reasoning in its determinations on both variance requests, and reject respondent's cross-assignments of error.

Nonetheless, LUBA affirmed the city's decision to approve the site plan, based on the city engineer's waiver of

those requirements. It concluded that the waiver was authorized by chapter 3.4 of the BDC. That chapter sets out standards for the design and construction of public and private infrastructure. Section 3.4.100 sets forth the "purpose and authority" for the specifications "in this Chapter." BDC 3.4.100(B) and (C) provide:

"**B. City's Authority.** The City Engineer may, at his/her discretion, modify or waive the required content of this chapter when in his/her judgment special circumstances dictate such change, pursuant to Section 3.4.100(C), below.

"**C. When Standards Apply.** Unless otherwise provided, the standard specifications for construction, reconstruction or repair of transportation facilities, utilities and other public improvements within the City shall conform to this Chapter. No development shall occur unless the public improvements related to development comply with the public facility requirements established in this Chapter, unless specifically exempt or otherwise specified by a land use review and/or condition of approval from a land use action."

(Boldface in original.)

Planning staff found that comments on the application provided by the city's transportation engineer showed her intent to waive the special setback and right-of-way requirements because of "special circumstances" under BDC 3.4.100(B). According to the hearings officer's findings, at the time of the public hearing,

"the City's traffic engineer, Ms. Robin Lewis, stated that the Engineering Division had decided or intended to waive the 36' pavement width requirement and explained generally why, in her opinion, such discretion to do so was important to the Engineering Division. Ms. Lewis further explained the waiver decision identifying the reasoning for such, including that there was a very low volume of traffic on the subject streets, low pedestrian traffic, and short street length and that the area was already developed, but for this lot, and redevelopment was very unlikely. According to the Traffic Engineer, the 'built environment' is now static, and includes other houses which do not comply with the current standards, the streets currently function very

well and as such the 36' width requirement was unnecessary. She relied heavily on the traffic analysis provide[d] by the applicant and her own observations of the site. * * *

"* * * * *

"* * * Ms. Lewis stated that the total average daily trips (ADT) on Steidl Road would be 170 with the triplex, only 11% of what is expected on a typical residential street. Steidl Road currently serves less than 150 ADT and the anticipated [volume] for the street classification is 1,500 ADT. She further testified that the peak p.m. ADT with the development of the triplex would increase by only .55% and that the street 'very infrequently' has even two cars on it at the same time. * * * She found that due to the built environment, including short street length of about two blocks, and conflict with existing structures in the event the street width and right-of-way are widened, that it was very unlikely that Steidl Road would ever redevelop. She generally explained that the widening of the street was unnecessary to accommodate vehicle traffic from planned and future growth."

The hearings officer found the engineer's reasoning to adequately state "special circumstances" sufficient to waive the street improvement and dedication requirements.

Before the city and on LUBA review, petitioners contended that the "special circumstances" standard for an engineer waiver was too indefinite to suffice as a criterion for a land use decision under ORS 227.173(1). That statute provides:

"Approval or denial of a discretionary permit application shall be based on standards and criteria, which shall be set forth in the development ordinance and which shall relate approval or denial of a discretionary permit application to the development ordinance and to the comprehensive plan for the area in which the development would occur and to the development ordinance and comprehensive plan for the city as a whole."

As this court has previously explained,

"[r]educed to its essentials, ORS 227.173(1) requires that development ordinances set forth reasonably clear standards for discretionary permit applications. The intent of the statute is to insure that those standards be the sole

basis for determining whether a discretionary permit application is approved."

*Lee v. City of Portland*, 57 Or App 798, 801, 646 P2d 662 (1982).

We understand petitioners to have argued below that the waiver allowance for "special circumstances" was not a "reasonably clear standard" because any distinguishing or "special" characteristic of the development could be used to excuse compliance. The hearings officer found that the standard could be determined by reference to other related code provisions. LUBA held that BDC 3.4.100(B) was a "highly subjective standard," but that ORS 227.173(1) did not forbid subjective standards. LUBA concluded that "the City Engineer's decision that the BDC 3.4.200 road standards and the BDC 3.5.300 special setback need not be imposed as a condition of approving the disputed triplex was within the City Engineer's discretion under BDC 3.4.100(B)" and that the standard complied with ORS 227.173(1). *Zirker v. City of Bend*, 59 Or LUBA 1, 20 (2009).

On review, petitioners argue that LUBA erred in concluding that the "special circumstances" standard was "reasonably clear" under ORS 227.173(1).[2] Petitioners claim that the standard does not give sufficient guidance to the applicant and city decision-maker to know the required proof of compliance with that standard. Petitioners also assert that the waiver could apply only to the transportation improvements required under BDC chapter 3.4 and not to the setback required by BDC 3.5.300(B). Respondent counters that the "special circumstances" criterion is sufficiently definite when construed in the context of other code provisions relating to street widths. We conclude that the "special circumstances" criterion is "reasonably clear" under ORS 227.173(1), but

---

[2] We note that the issue raised by the parties in this case involves only ORS 227.173(1). That is in contrast to the circumstances in our recent case, *State ex rel West Main Townhomes v. City of Medford*, 233 Or App 41, 47-49, 225 P3d 56 (2009), where we applied the requirements of both ORS 227.173(1) and ORS 227.173(2). Subsection (2) is applicable only "[w]hen an ordinance establishing approval standards is required under ORS 197.307 to provide only clear and objective standards[.]" The parties in this case do not contend that objective standards are required by ORS 227.173(2).

that the waiver authority applies only to the transportation improvements required by BDC chapter 3.4.[3]

■       The method for determining the intended meaning of a statute is to examine the text of the statute for its plain meaning, together with the context of related statutes, and material portions of the legislative history of the measure. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). On its face, ORS 227.173(1) requires that: (1) a decision on a discretionary permit application be "based on standards and criteria"; (2) that those standards and criteria "relate [the action on the application] to the development ordinance and to the comprehensive plan"; and (3) that the standards and criteria "shall be set forth in the development ordinance." As we held in *Lee*, the requirement that a discretionary permit decision be "based on standards and criteria" necessarily means that the standards must operate to guide official discretion in deciding whether to issue the permit, so that those standards, and not some other predilection of the decision-maker, provide "the sole basis for determining whether a discretionary permit application is approved." *Lee*, 57 Or App at 801. To provide that guidance, the standards must be sufficiently definite to give the parties and the decision-maker an understanding of what proof and arguments are necessary to show that the application complies with those criteria and to make the outcome capable of prediction by the decision-maker. The statute's requirement that the necessary standards and criteria must allow a relation of the action on the permit to the comprehensive plan implies that the standards advance the policies in the applicable comprehensive plan. *See also*

---

[3] We also express no opinion on whether ORS 227.173(1) applies to respondent's site plan application. ORS 227.173(1) regulates "[a]pproval or denial of a discretionary permit application." ORS 227.160(2)(a) defines "permit" for purposes of ORS 227.173 so as not to include a "limited land use decision as defined in ORS 197.015." ORS 197.015(12), in turn, defines "limited land use decision" to include the "approval or denial of an application based on discretionary standards designed to regulate the physical characteristics of a use permitted outright, including but not limited to site review and design review." The parties have not raised the issue of whether respondent's site plan application is a limited land use decision, or whether the variance requests take the application out of that category. We assume for purposes of this opinion that ORS 227.173(1) applies to the city's decision.

ORS 197.175(2)(b) (obligating cities to "[e]nact land use regulations to implement their comprehensive plans"). Finally, the standards must be "set forth in the development ordinance," requiring that the standards be adopted and published exclusively in the development ordinance prior to the decision. *See BCT Partnership v. City of Portland*, 130 Or App 271, 276 n 2, 881 P2d 176 (1994) (ORS 227.173(1) "seems to have the purpose of assuring that permit decisions will be based on pre-existing legislation").

In *BCT Partnership*, we explained that a discretionary permit approval standard could be gleaned from various parts of the development code. 130 Or App at 277. In that case, an applicant for a parking garage conditional use permit was required to prove that the application was consistent with the city's "short term parking strategy," a strategy that was not explicitly announced in the city's development code. *Id.* at 273-74. We concluded that the standard was "set forth" under ORS 227.173(1) in related general provisions of the development code. We concluded:

> "ORS 227.173 allows cities to identify the standards and criteria that apply to particular permits by interpreting more general provisions that are 'set forth' in their land use legislation, and from which the specific applications reasonably follow. We also conclude that the city satisfied the statute here. The city's legislation includes sufficient general provisions to establish and identify the short term parking strategy that the city interpreted them as embodying; the issues to be addressed in the proceeding were sufficiently discernible from those provisions; and the city's order provided the necessary explanation under ORS 227.173(2) of what standards it was applying and how they applied."

*Id.*

To reiterate, BDC 3.4.100(B) allows discretion by the city engineer to "modify or waive the required content of this chapter when in his/her judgment special circumstances dictate such change, pursuant to Section 3.4.100(C), below." Two limiting features of a "special circumstances" waiver are apparent from the face of the ordinance. First, "special circumstances" must be a matter of "judgment" or expertise of an engineer. BDC 3.4.100(B) allows a waiver by the engineer

"in his/her judgment." The ordinance contemplates that some specifications for a public improvement may not be feasible or practical in context, and allows the exercise of professional engineering judgment by the city engineer to modify or waive the specification. Thus, the subject matter of the waiver must be one that requires the application of engineering expertise.

Second, the specification waiver authority under BDC 3.4.100(B) means something different than the general authority to allow a variance to a transportation design guideline under BDC 3.4.200(B), relating to infeasibility due to topographic constraints or sensitive lands. It is reasonable to construe the particular waiver authority in BDC 3.4.100(B) to not be redundant of general variance authority expressed elsewhere in the code. *Cf.* ORS 174.010 (stating rule that construction of statutes is preferred "as will give effect to all" provisions in the law); *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005) (courts should avoid construction of legislation that results in surplusage and redundancy). Thus, the engineer's waiver authority would not extend to the circumstances that would allow a waiver of the requirements imposed by BDC 3.4.200(B) and BDC 5.1.400.

Other parts of BDC chapter 3.4 supply particulars for the exercise of authority under BDC 3.4.100(B). BDC 3.4.200(E) provides that "[s]treet location, width and grade shall be determined in relation to existing and planned streets, topographic conditions, public convenience and safety, and in appropriate relation to the proposed use of the land to be served by such streets." Moreover, BDC 3.4.200(F)(2) sets out particular "factors" to determine the "pavement width" for streets, including "[s]treet classification in the Transportation System Plan," "[a]nticipated traffic volume," "[o]n-street parking needs," and "[s]idewalk and bikeway requirements based on anticipated level of use." All of those policies are stated for the purpose of providing "standards for attractive and safe streets that can accommodate vehicle traffic from planned growth" under BDC 3.4.100(A). Those policies inform the application of the engineer's expertise to modify or avoid the standards for street width and frontage dedication.

The city's traffic engineer exercised professional judgment to grant a waiver and vary the required width for Steidl Road, given technical conclusions about "anticipated traffic volumes," "on-street parking needs," "the proposed use of the land to be served" by Steidl Road, and "public convenience and safety" under the development code. Relying on traffic analysis provided by the applicant and projected traffic counts, the engineer concluded that a 36-foot pavement width for Steidl Road was not needed, given the "very low volume of traffic on the subject streets, low pedestrian traffic, and short street length and that the area was already developed, but for this lot, and redevelopment was very unlikely." That judgment was based on reasonably clear criteria expressed in the development code for the determination of road pavement width. Those criteria allowed the parties to present proof and arguments on expected traffic increases for the road and were sufficient to guide the application of the engineer's expertise. The city's waiver decision on pavement and right-of-way width for Steidl Road was lawful under ORS 227.173(1).

■ LUBA erred, however, in concluding that the engineer's waiver authority under BDC 3.4.100(B) and (C) for "public facility requirements established in this Chapter" extended to development setback requirements required in a different chapter of the code, BDC 3.5.300. A special setback under BDC 3.5.300 is not a "public facility requirement"; nor is it "established in this Chapter." BDC 3.4.100(A) states that the purpose of "this Chapter" is to "provide requirements for design and construction of public and private infrastructure." Other "chapters" of the BDC, such as chapter 3.3 of the code (Vehicle Parking, Loading and Bicycle Parking), contain separate statements of purpose and separate references to "this Chapter." BDC 3.3.100 ("The purpose of *this Chapter* is to provide basic and flexible standards for the development of vehicle parking, loading and bicycle parking." "*This Chapter* also provides standards for bicycle parking because many people use bicycles * * *." (Emphasis added.)). Thus, read in context with other provisions of the code, it is clear that, by using the term "established in this Chapter" in BDC 3.4.100(A), the code refers to requirements established in chapter 3.4. Special setback requirements are established

under BDC 3.5.300, not chapter 3.4. Accordingly, the engineer's waiver authority—which applies only to the requirements established in chapter 3.4—does not extend to special setback requirements, and the waiver in this case was beyond the engineer's authority.[4]

Reversed and remanded.

---

[4] Petitioners' other assignments of error are not well taken, and we do not address them.