Argued and submitted November 12, 2020, affirmed January 13, 2021

WAVESEER OF OREGON, LLC,
*Respondent,*

*v.*

DESCHUTES COUNTY,
*Petitioner.*

Land Use Board of Appeals
2020038; A174515

482 P3d 212

Petitioner Deschutes County seeks judicial review of a decision of the Land Use Board of Appeals (LUBA). LUBA reversed a decision by the board of county commissioners denying respondent Waveseer of Oregon, LLC's application to develop a marijuana production facility. The board denied the application based on its conclusion that the proposed facility would be located within 1,000 feet of two "youth activity center[s]," in violation of Deschutes County Code 18.116.330(B)(7)(a)(iv). LUBA reversed, concluding, among other things, that the county's interpretation and application of the term "youth activity center" rested on uncodified criteria in violation of the codification requirement in ORS 215.416(8)(a). On judicial review, the county assigns error to, among other things, LUBA's determination that the county's interpretation and application of the term "youth activity center" violated the codification requirement. *Held*: LUBA did not err in concluding that the county's interpretation of the term "youth activity center" violated the statutory codification requirement. Nothing in the county code signaled how the county interpreted the term—its standards were instead promulgated through the process of adjudication, which did not satisfy the codification requirement.

Affirmed.

D. Adam Smith argued the cause for petitioner. Also on the brief was Amy Heverly.

Corinne S. Celko argued the cause for respondent. Also on the brief were Alex J. Berger and Emerge Law Group.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Affirmed.

**LAGESEN, P. J.**

Petitioner Deschutes County seeks judicial review of a decision of the Land Use Board of Appeals (LUBA) that reversed a decision by the board of county commissioners denying respondent Waveseer of Oregon, LLC's application to develop a marijuana production facility on land zoned for exclusive farm use (EFU). The board denied the application based on its conclusion that the proposed facility would be located within 1,000 feet of two "youth activity center[s]," in violation of Deschutes County Code (DCC) 18.116.330 (B)(7)(a)(iv). LUBA reversed, concluding, among other things, that the county's interpretation and application of the term "youth activity center" rested on uncodified criteria in violation of the codification requirement contained in ORS 215.416(8)(a) and, for that reason, could not be applied to deny Waveseer's application. On review to determine whether LUBA's order is "unlawful in substance or procedure," ORS 197.850(9)(a), we affirm.

Under the Deschutes County Code, a marijuana production facility cannot be located within 1,000 feet of a school, childcare center, national monument, state park or, as pertinent here, a "youth activity center." DCC 18.116.330 (B)(7)(a). The code provides further that that 1,000-foot distance is "measured from the lot line of the affected properties listed in DCC 18.116.330(B)(7)(a) to the closest point of the buildings and land area occupied by the marijuana producer or marijuana processor." DCC 18.116.330(B)(7)(b).

Waveseer applied to the county to develop a marijuana production facility on EFU-zoned land. That land currently is developed with a house and a barn. Immediately to the south is a property known as the Rhinestone Ranch. It serves as a family residence and as a working ranch. The ranch hosts equestrian activities for youth, including horseback-riding classes and camps, birthday parties, and other similar events. Immediately to the east is a property that LUBA referred to as the "Dodds Road Residence." It has a house and outbuildings and serves as a family residence but also hosts 4-H agricultural activities for youth. Waveseer's proposed marijuana production facility would be within 1,000 feet of both the Rhinestone Ranch and the

Dodds Road residence, when the 1,000 feet is measured in accordance with DCC 18.116.330(B)(7)(b).

The county planning department administratively approved Waveseer's application. Opponents—who are not parties to this proceeding—appealed that approval to the board of county commissioners. The board denied Waveseer's application based solely on its determination that the Rhinestone Ranch and the Dodds Road residence were "youth activity center[s]" within the meaning of DCC 18.116.330(B)(7)(a)(iv), so as to preclude Waveseer's proposed marijuana production facility given its less-than-1,000 feet proximity to those properties. The board determined that each property hosted farm and residential uses that "center around youth on a regular basis," making them each a "youth activity center" for the purpose of the code.

Waveseer appealed to LUBA, and LUBA remanded to the county. It determined that the county's articulated standard for what constituted a "youth activity center"—a term undefined in the county code—was "unreasonable because there is no way for an applicant to determine if a particular EFU-zoned property could be used for marijuana production," given the breadth of the county's standard. *Waveseer of Oregon, LLC v. Deschutes County*, ___ Or LUBA ___, ___ (LUBA No 2019-036, Oct 17, 2019) (*Waveseer I*). That breadth, LUBA concluded, meant the county's interpretation of what constituted a "youth activity center" conflicted with the requirement in ORS 215.416(8)(a) that standards for approving or denying a permit application must be codified, that is, "set forth in the zoning ordinance or other appropriate ordinance or regulation of the county." LUBA remanded to the county, suggesting that the board might be able to interpret the provision in a manner that did not run afoul of ORS 215.416(8)(a)'s codification requirement. LUBA also noted that there were other aspects of Waveseer's application, regarding noise and odor, that the board had not resolved that could potentially supply an independent basis for denying Waveseer's application.

On remand the board resolved the noise and odor issues in Waveseer's favor. But it again concluded that the Rhinestone Ranch and the Dodds Road residence constituted

"youth activity center[s]" for purposes of DCC 18.116.330 (B)(7)(a). In so doing, the board incorporated by reference its decision in another matter presenting the same issue, the *Nehmzow* case.[1]

In the *Nehmzow* case, the board explained its view that the term "youth activity center" generally means a "gathering place[] for children." It noted that the county "intentionally separated youths from marijuana production and processing, particularly concentrations of youths engaging in organized activities." The board further explained that, in its view, whether a property was used as a "youth activity center" was something that necessarily had to be determined on a case-by-case basis based on a list of 10 factors:

> "[T]his Board has compiled a list of ten factors that it collectively has found persuasive when previously called to interpret the otherwise undefined term. It should be noted that the Board's intention in setting forth the aforementioned ten factors is simply to consolidate and clarify our previous interpretations. The Board intends that these ten factors are to be applied as a checklist of considerations, but not all such considerations are required elements for a use to rise to the level of a 'youth activity center.' A use may satisfy only some of the factors, and still qualify as a 'youth activity center.'"

The 10 factors identified by the board were:

"(1)  Separate building, facility, or area for use

"(2)  Youth recreation activity accommodated regularly

"(3)  Adult supervision provided

"(4)  Specific toys, games, or equipment available for activity

"(5)  Permitted or licensed activities

"(6)  Organized group activities

"(7)  School related activities

---

[1] The board's decision in *Nehmzow* was appealed to LUBA in *Nehmzow v. Deschutes County*, ___ Or LUBA ___ (LUBA No 2019-110, Aug 10, 2020), and, on judicial review before our court, was decided today. *Nehmzow v. Deschutes County*, 308 Or App 533, 479 P3d 340 (2021).

"(8)    Usage (frequency/ regularity/ intensity/ number of participants) exceeds usual EFU use by 50% or more

"(9)    Use observable from neighboring properties

"(10)   Youth activities marketed to the public (e.g., website, social media, published or publicized)."

The board also stated that the analysis contained a foreseeability component: whether it would be foreseeable to an applicant who had exercised due diligence that the county would consider a particular property to be a "youth activity center." Applying that analysis to the current case, the board concluded that the Rhinestone Ranch and the Dodds Road residence were "youth activity center[s]" because of the nature of the youth activities conducted on them, because due diligence would have revealed those activities, and because, according to the board, it would be foreseeable that the county would view those properties as "youth activity center[s]" based on those activities. The board again denied Waveseer's application, which again led Waveseer to appeal to LUBA.

This time, LUBA reversed the denial of Waveseer's application outright. Rejecting the county's contention that Waveseer had waived the right to raise the issue, LUBA concluded that the county's interpretation and application of the "youth activity center" provision still contravened the codification requirement of ORS 215.416(8)(a) because an applicant still could not discern from the terms of the code itself what would constitute a "youth activity center." LUBA explained:

"Under the current DCC, an applicant or opponent cannot know or predict whether activities on a property within the separation buffer constitute a youth activity center with reference to the DCC. The codified phrase 'youth activity center' itself does not reasonably inform an applicant or opponent what evidence and argument address that criterion. As we pointed out in *Waveseer I*, the phrase 'youth activity center' is not defined in the DCC, is not listed as a permitted use in any zone, and is not defined or used in any state statute or administrative rule. The board's interpretation and application of the *Nehmzow* factors demonstrates that the code itself fails to sufficiently inform interested parties of the basis on which an application may be

approved or denied. That interpretation allows the county to deny a marijuana production application if the county finds that activities taking place on a neighboring property satisfy one or more of the uncodified *Nehmzow* factors. No applicant or opponent could reasonably predict whether and when the county would determine that youth-oriented activities constitute a youth activity center because the relevant criteria do not appear in the DCC."

Because it violated the codification requirement, LUBA concluded that the county could not apply the "youth activity center" provision to Waveseer's application to deny it.[2]

In addition to concluding that the county's interpretation and application of the term "youth activity center" was too "amorphous" to satisfy ORS 215.416(8)(a), LUBA also determined that the county's interpretation was not a plausible reading of its text and context. Consequently, LUBA opined, codification problems aside, the county's interpretation would not be entitled to deference under *Siporen v. City of Medford*, 349 Or 247, 243 P3d 776 (2010), and was, in fact, wrong. In particular, LUBA reasoned that the county's interpretation did not plausibly account for the word "center" in the context of the code because it does not mandate that a "youth activity center" involve a place "'built, constructed, installed, or established' to serve or facilitate 'youth activit[ies],' and, instead, interprets the term as any place where youth activities occur." LUBA noted that other provisions of the Deschutes County Code using the word "center" appeared to require such separately constructed or established facilities, and reasoned that it was inconsistent with those other textual references to conclude that a "youth activity center" did not require such a facility. LUBA acknowledged that it did not need to reach the issue of the plausibility of the county's interpretation of the phrase

---

[2] LUBA also addressed the goal-post standard of ORS 215.427(3), which requires that an application for a land-use permit be evaluated under the standards and criteria existing as of the date the application is filed. As we understand LUBA's ruling, the goal-post rule informs the disposition in a matter in which a standard has been applied in violation of the ORS 215.416(8)(a) codification requirement. If a county erroneously applies uncodified standards, and its decision is reversed for that reason, the goal-post standard of ORS 215.427(3) precludes the county from fixing the codification problem in the case at hand because it would prohibit the county from applying the newly codified standards.

"youth activity center" but did so based on its view that the issue was likely to arise again.

Finally, having concluded that the county's interpretation of the term "youth activity center" violated the codification requirement and could not be applied to Waveseer's application, LUBA reversed the board's denial of Waveseer's application outright and ordered the county to approve it.

The county petitioned us for judicial review of LUBA's decision. It raises four assignments of error. In its first assignment of error, the county contends that LUBA erred when it determined that the county's interpretation of the term "youth activity center" was implausible and not entitled to deference under *Siporen*. In its second assignment of error, the county asserts that LUBA erred in determining that the county's interpretation and application of the term "youth activity center" violated the codification requirement. In its third assignment of error, the county contends that LUBA erred by entertaining Waveseer's arguments regarding the codification requirement to the extent that Waveseer did not raise those arguments to LUBA in its initial appeal. Finally, in its fourth assignment, the county contends that LUBA erred in reversing its decision outright under ORS 197.835(10)(a)(A). As mentioned, our review is to determine whether LUBA's order is "unlawful in substance or procedure." ORS 197.850(9)(a).

We start with the primary basis for LUBA's disposition, and the one addressed in the county's second and third assignments of error: that the county's interpretation of the "youth activity center" criterion in DCC 18.116.330(B)(7)(a) violates the codification requirement of ORS 215.416(8)(a).

As an initial matter, we reject the county's contention that LUBA erred in considering the arguments on that point because Waveseer had not raised them in its initial appeal. The county, to be sure, is correct that Waveseer's failure to raise those arguments initially has meant that the county had to expend time and effort in resolving this matter that could have been spared had Waveseer made those arguments initially. But the county has identified no source of law that would permit us to conclude that LUBA's procedural choice to consider those arguments is one that

is "unlawful," so as to permit us to conclude that LUBA's order was "unlawful in *** procedure" to the extent LUBA decided to consider arguments that were not raised in the initial appeal but could have been. ORS 197.850(9)(a).

As for the merits of LUBA's determination, we conclude that it is legally correct. ORS 215.416(8)(a) states:

> "Approval or denial of a permit application shall be based on standards and criteria which shall be set forth in the zoning ordinance or other appropriate ordinance or regulation of the county and which shall relate approval or denial of a permit application to the zoning ordinance and comprehensive plan for the area in which the proposed use of land would occur and to the zoning ordinance and comprehensive plan for the county as a whole."

We have recognized that the nearly identically worded provision applicable to land use decisions by cities is satisfied if the applicable code "contains provisions that can reasonably be interpreted and explained as embodying the standards and criteria applicable to the particular decision." *BCT Partnership v. City of Portland*, 130 Or App 271, 276, 881 P2d 176 (1994). The key is that the standards must be ascertainable from the terms of the local government's *legislation*. *Zirker v. City of Bend*, 233 Or App 601, 610, 227 P3d 1174, *rev den*, 348 Or 415 (2010). In other words, ORS 215.416(8)(a) generally does not permit a county to develop land use approval standards and criteria through quasi-adjudicative decision-making; the standards must be reasonably discernible from provisions of the code itself. *See id*. As we recently explained,

> "[i]n plain terms, ORS 215.416(8)(a) requires that a decision on a permit application be based on 'standards and criteria which shall be set forth in the zoning ordinance or other appropriate ordinance or regulation of the county.' The planning director's interpretation was not something set forth in the zoning ordinance or other appropriate ordinance or regulation of the county. Therefore, we agree with LUBA's conclusion that the planning director's similar use determination was only an interpretation of a criterion and not a criterion itself."

*Jones v. Willamette United Football Club*, 307 Or App 502, 514, 479 P3d 326 (2020).

True, we must acknowledge, it may often be a close call whether a local government has, in effect, promulgated new approval standards and criteria through the process of adjudication, and not merely refined by interpretation existing codified standards and criteria. Detecting the precise point at which an act of interpretation becomes an act of legislation can hardly be said to be a science.

Here, though, the county's interpretation and application of the phrase "youth activity center" to involve a case-by-case 10-factor checklist analysis is not in any way signaled by the provisions of the Deschutes County Code. Simply put, as LUBA recognized, no one could tell by reading the Deschutes County Code what is likely to be deemed a "youth activity center," and the case-by-case approach contemplated by the county under the unweighted *Nehmzow* factors does not improve matters. The case-by-case approach as articulated by the county appears largely discretionary and standardless at this juncture, and, in all events, nothing in the provisions of the code signals the notion of a 10-factor analysis, let alone the particular 10 factors identified by the county as relevant. Under those circumstances, LUBA was correct to conclude that the county's interpretation of the "youth activity center" criterion in DCC 18.116.330(B)(7)(a) violates the codification requirement of ORS 215.416(8)(a).

We next turn to the issue of disposition, raised in the county's fourth assignment of error. The county contends that LUBA erred in reversing outright and ordering the county to approve Waveseer's application under ORS 197.835(10)(a). In the county's view, a remand was the appropriate disposition. The county's arguments on this point largely focus on the fact that, in its view, it was not put on notice of this possibility by the arguments in Waveseer's briefing to LUBA, and on the fact that this outcome will subject it to attorney fees. We can see how LUBA's disposition may have come as a surprise to the county, particularly after LUBA's previous remand to the board. That remand would have suggested to the county the reasonable possibility that it could interpret and apply the "youth activity center" criterion to deny Waveseer's application in a way that comported with ORS 215.416(8)(a). Ultimately, though, the county's arguments do not demonstrate any error by LUBA

in its choice of disposition. In particular, the county does not posit to us any way in which it could interpret and apply the "youth activity center" criterion to *deny* Waveseer's application, even if there might be plausible interpretations of that criterion that would not contravene the codification requirement of ORS 215.416(8)(a). For those reasons, we reject the county's fourth assignment of error.

Finally, we address briefly the county's argument in its first assignment of error—that LUBA erred when it determined that the county's interpretation of the phrase "youth activity center" in DCC 18.116.330(B)(7)(a) is not plausible, given the text and context of that provision. We ultimately do not resolve the issue because resolution of the question will not alter the outcome of this appeal. Regardless of whether the county's interpretation of the phrase is a plausible one, it represents an interpretation and application of the county code that contravenes the codification requirement. That, combined with the fact that the county has not identified for us an alternative plausible interpretation that would both (1) comport with the codification requirement and (2) allow for the denial of Waveseer's application means that the county has not demonstrated that LUBA's disposition of this matter was unlawful in substance so as to entitle the county to a reversal.

We nevertheless note for the record that our opinion should not be understood as an affirmance of LUBA's ruling on the plausibility of the county's interpretation of the phrase "youth activity center." LUBA's analysis on that point focused on one common definition of the word "center," but the county's (inadequately codified) interpretation is consistent with another common definition of the word "center." As the dictionary and ordinary usage make clear, the word center can be synonymous with hub: "a point, area, person, or thing that is most important or pivotal in relation to an indicated activity, interest, or condition * * * < a railroad ~>." *Webster's Third New Int'l Dictionary* 362 (unabridged ed 2002). That common understanding of the word "center" would appear to track the county's reading of the phrase to encompass a "point" or "area" that is "important or pivotal in relation to" the activities of youth, as well as the context of the rule in which the county has employed the term "youth activity

center"—a rule on its face aimed at distancing marijuana production from places where youth regularly congregate. That is an objective that might be undermined by LUBA's interpretive approach, which appears to be focused on the facility-based definition of the word "center." Although some places where youth congregate for activities might involve facilities (like the schools or child care centers mentioned in other provisions of DCC 18.116.330(B)(7)(a)), other places where youth congregate for activities might not (like the national monuments and state parks mentioned in a different provision of DCC 18.116.330(B)(7)(a)). Thus, LUBA's conclusion that the county implausibly interpreted its code is subject to question. We leave that question for another day, which may not come. When the county either amends its code or narrows its interpretation of it to address the codification issue, that process might well and finally inter the issue.

Affirmed.